BRUSH ELECTRIC CO. v. WESTERN ELECTRIC CO. (two cases).

(Circuit Court of Appeals, Seventh Circuit. October 5, 1896.)

Nos. 271, 272.

1. RES JUDICATA—INTERLOCUTORY DECREES—PATENT CASES.
   A decree awarding a perpetual injunction in a patent suit, but with an order of reference to a master to ascertain the damages suffered by the infringement, is an interlocutory, and not a final, decree, and therefore does not operate as an estoppel in a subsequent suit.

2. PATENTS—INTERPRETATION AND INFRINGEMENT—DOUBLE-CARBON ELECTRIC LAMPS.
   The Brush patent, No. 219,208, for a double-carbon electric lamp, is not void as being for a function or result. But the claims are not to be construed as covering the arc-forming separation of each set of carbons as it begins to burn. They are limited to mechanism of which an essential feature is the dissimultaneous initial separation of the carbons, and are not infringed by the Scribner lamp (patents Nos. 418,758, 502,535, and 502,536), in which the initial separation is simultaneous. 69 Fed. 240, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Northern Division.

These cases were argued at our October session, 1895. They involve questions of the validity, construction, and infringement of letters patent No. 219,208, granted September 2, 1879, to Charles A. Brush, for a double-carbon electric lamp. In case No. 271 the Scribner lamp, made in conformity with patent No. 418,758, granted January 7, 1890, to Charles A. Scribner, and in case No. 272 the Monitor lamp and the Twin lamp, which the appellee asserts the right to make and use under letters patent, also to Scribner, No. 502,535 and No. 502,536, respectively, are the devices which are alleged to infringe the Brush patent. The claims in question read as follows: "(1) In an electric lamp, two or more pairs or sets of carbons, in combination with mechanism constructed to separate said pairs dissimultaneously or successively, substantially as and for the purpose specified. (2) In an electric lamp, two or more pairs or sets of carbons, in combination with mechanism constructed to separate said pairs dissimultaneously or successively; and

establish the electric light between the members of but one pair (to wit, the pair. last separated), while the members of the remaining pair or pairs are maintained in a separated relation, substantially as shown. (3) In an electric lamp having more than one pair or set of carbons, the combination, with said carbon sets or pairs, of mechanism constructed to impart to them independent and dissimultaneous separating and feeding movements, whereby the electric light will be established between the members of but one of said pairs or sets at a time, while the members of the remaining pair or pairs are maintained in a separate relation, substantially as shown. (4) In a single electric lamp, two or more pairs or sets of carbons, all placed in circuit, so that, when their members are in contact, the current may pass freely through all said pairs alike, in combination with mechanism constructed to separate said pairs dissimultaneously or successively, substantially as and for the purpose, shown. (5) In an electric lamp wherein more than one set or pair of carbons are employed, the lifter, D, or its equivalent, moved by any suitable means, and constructed to act upon said carbons or carbon-holders dissimultaneously or successively, substantially as and for the purpose shown. (6) In an electric lamp wherein more than one pair or set of carbons are employed, a clamp, C, or its equivalent, for each said pair or set, said clamps, C, adapted to grasp and move said carbons or carbon-holders dissimultaneously or successively, substantially as and for the purpose shown."

The lifter, D, and the clamps, C, referred to in the fifth and sixth claims, are illustrated by Fig. 2 of the patent, of which the following is a copy:

Fig. 2.

The second claim, which, as first presented, was rejected because "altogether too broad, if not functional," read in this wise: "An electric lamp or light regulator having two or more pairs or sets of carbons, each pair or set adapted to have independent separating and feeding movements, whereby the voltaic arc will be established between the members of but a single one of said pairs or sets, substantially as shown."

This patent has been in frequent litigation, and, while the validity of some of the claims is not now denied, their construction and scope are strenuously contested. In the following cases are reported opinions in some of which the prior art and other pertinent facts are so fully stated and discussed as to make a further statement or extended discussion here unnecessary: Brush Electric Co. v. Ft. Wayne Electric Co., 40 Fed. 826; Id., 44 Fed. 284;

Brush Electric Co. v. Western Electric Light & Power Co., 43 Fed. 533; Brush Electric Co. v. New American Arc Light Co., 46 Fed. 79; Brush Electric Co. v. Electric Imp. Co., 52 Fed. 965.

It is contended, under pleadings and proofs which present the question, that the issues in case No. 271, and in No. 272 in part, were tried and determined in the suit against the Western Electric Light & Power Company, called the "Toledo Case," and that the Western Electric Company was privy to, and had sole and open charge of the defense in, that suit, and therefore is conclusively bound by the decree therein rendered. That case was heard by Judges Brown and Ricks, and, summing up the prior art, Justice Brown said: "The French patent of Denayrouse, it is true, contained the principal feature of the Brush patent in the successive combustion of two pairs of carbons, but by means so different that they can by no stretch of construction be regarded as mechanical equivalents. The invention has no application to carbons placed end to end, as in the American patents, but to them lying side by side, as in the patent of Jablochkoff, who appears to have originated this arrangement. It is, in fact, a duplication of the Jablochkoff candle, with the addition of 'an electric key for making and breaking contact with the electric current for each such candle. This key is worked by one arm of a lever, the other arm of which has a stud pressed by a spring against the candle which is burning, near its lower end. When this candle is burned nearly down, so that the stud of the lever is no longer supported by the solid matter of the candle or carbon, the lever and key are moved by the spring, and contact is thus broken with the circuit for the nearly consumed candle, and is made with the circuit for a fresh candle, which is thereby kindled, and thus successively, as candle after candle becomes consumed, fresh candles are kindled automatically to take their place.' But, as this patent is not seriously claimed as an anticipation, no further reference to it will be made. The main questions in this case turn upon the proper construction of the Brush patent. While the claims are undoubtedly broad, they ought not to be interpreted as for a function or result, since there is nothing novel in substituting one pair of carbons for another, and thus securing a successive combustion of two or more pairs. It was done long before the Brush patent, and may still be done by manual interference, by replacing one set of carbons with another, or by any mechanism which does not involve the dissimultaneous and dissimultaneously separating and feeding movement. What the claims purport to cover are briefly all forms of mechanism constructed to separate the two or more pairs or sets of carbons 'dissimultaneously' (a word coined for the occasion, but readily understood) or successively, in order that the light may be established between the members of but one pair or set at a time, while members of the remaining pair are maintained in a separate relation. It is claimed by the defendant, however, that the words 'dissimultaneously or successively,' contained in the first six claims of the patent, refer only to the exact instant—the very punctum temporis—of the separation of the carbons; and that, as the Scribner patent, under which the defendants are operating, provides for the initial simultaneous separation of the carbons, there is no infringement, though the light is formed between but one pair, the other being held in reserve to await their consumption. If this contention be correct, then it necessarily follows that Brush, who is acknowledged to be the actual inventor of the double carbon, and whom defendants' expert, Mr. Lockwood, frankly admits (page 243) to be justly regarded as having done more than any one else to make electric arc lighting on a large scale a practical success, secured by his patent the mere shade of an idea,—a wholly immaterial and useless feature,—abandoning to the world all that was really valuable in his invention." 43 Fed. 537.

The court below, holding the dissimultaneous initial separation of the carbons to be an essential feature of the Brush lamp, found that the appellee had not infringed. 69 Fed. 240.

H. A. Seymour, for appellant.

Geo. P. Barton and C. A. Brown, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The decree in the Toledo Case awarded a perpetual injunction, but with an order of reference to a master to ascertain the damages by reason of infringement, and for that purpose the suit, it is conceded, is still pending. It is therefore only an interlocutory decree, and not available as an estoppel in respect to any issue in these suits. Barnard v. Gibson, 7 How. 650; Humiston v. Stainthorp, 2 Wall. 106; McGourkey v. Railway Co., 146 U. S. 545, 13 Sup. Ct. 172; David Bradley Manuf'g Co. v. Eagle Manuf'g Co., 6 C. C. A. 661, 57 Fed. 980, and 18 U. S. App. 349; Jones Co. v. Munger Improved Cotton Mach. Manuf'g Co., 1 C. C. A. 668, 50 Fed. 785, and 2 U. S. App. 188; Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, and 5 U. S. App. 151; Marden v. Campbell Printing-Press & Manuf'g Co., 15 C. C. A. 26, 67 Fed. 809, and 33 U. S. App. 123; Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 19 C. C. A. 25, 72 Fed. 545.

The proposition that the claims of the Brush patent, excepting the fifth, are void because they are for a result or a function, and not for definite means, we do not consider tenable. As was said in the Ft. Wayne Case, 40 Fed. 826, 833:

"The specification describes mechanism whereby a result may be accomplished, and the claims are not for mere functions. * * * They are for combinations of specific mechanisms, and their substantial equivalents, and not for results irrespective of means for their accomplishment."

In the sixth claim the clamp, C, is described as "adapted" to grasp and move the carbons; but, there being no express reference to any mechanism to be used in connection with them, we are not ready to agree that the claim is "for the two clamps in combination with the mechanism described in the patent for actuating the clamps." See Temple Pump Co. v. Goss Pump & Rubber Bucket Manuf'g Co., 7 C. C. A. 174, 58 Fed. 196, and 18 U. S. App. 229. Upon the controlling question—whether the claims of the patent refer to the initial separation or only to an arc-forming separation of the carbons of the lamp—we concur in the view of the court below.

It is not to be questioned that Brush's object was to produce an electric lamp in which, by means of automatic mechanism, two or more sets of carbons should be consumed successively; but, while that fact should not be overlooked in any attempt to determine the meaning of the claims of his patent, the distinction between the object of an invention and the means contrived for its accomplishment should not be forgotten. The object to be achieved is not patentable; the means may be. The claims in question, as it was necessary they should be in order to be valid, are for the means described, and their equivalents, of effecting in a single lamp the successive burning of two or more pairs of carbons. To accomplish that purpose Brush devised and claimed a "mechanism constructed to separate said pairs dissimultaneously or successively, substantially as described, and for the purpose specified." As the lamp and its operation are described, there occurs in it first a separation of one pair of carbons, and, closely following, a separation of the second pair, producing, between the latter, if there be but two sets, an arc light which

burns until the carbons are consumed, whereupon the carbons of the other pair are brought again into contact, and at once are separated the second time, producing an instant renewal of the arc, which continues, barring accident, until the carbons supporting it are consumed. In the light of the prior art, how ought the claims to be construed? Without attempting a presentation of that art, we are content with the summary statement of it made in the Toledo Case. "While the claims," as it is there said, "are undoubtedly broad, they ought not to be interpreted as for a function or result, since there is nothing novel in substituting one pair of carbons for another, and thus securing a successive combustion of two or more pairs. It was done long before the Brush patent, and may still be done by manual interference, by replacing one set of carbons with another, or by any mechanism which does not involve the dissimultaneous and dissimultaneously separating and feeding movement." It is, of course, an obvious and necessary characteristic of the Brush lamp that there shall be in it a successive or dissimultaneous arc-forming separation, because otherwise there cannot be a successive consumption of the different sets of carbons. In other words, in a double-carbon lamp successive burning and dissimultaneous arc-forming separations are inseparable conditions. A claim for one is equivalent to a claim for the other. The final object to be accomplished is the successive burning of the different sets of carbons, but that cannot be without an arc-forming separation of each set as it begins to burn. If, therefore, the claims of the patent, as contended, and as seems to have been adjudged in the Toledo Case, cover the arc-forming separation with which the burning of each set of carbons begins, the patent gives a monopoly of all possible lamps in which two or more sets of carbons are brought automatically into successive use, no matter what the means or mechanism employed. So broad a construction is not admissible. It is anticipated by the patent of Denayrouse, and probably by those of Wilde, Reynier, and Siemens and Halske; at least when considered together and in connection with the Day lamp. Florsheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20. There cannot be a mechanism capable of "substituting one pair of carbons for another, and thus securing a successive combustion of two or more pairs," "which does not involve the dissimultaneous and the dissimultaneously separating and feeding movement," if that expression means the so-called "arc-forming separation," and not the initial separation so plainly illustrated by the lifter, D, as shown in the drawing and explained in the specification of the patent. The second claim, which was first presented to the patent office, covered, in terms, "independent separating and feeding movements, whereby the voltaic arc will be established between the members of but a single one of said pairs or sets, substantially as shown." That was an appropriate and accurate mode of expressing the idea of arc-forming separation, and in none of the claims allowed is there an equivalent expression. That claim, however, was rejected, not because functional, but because it was "altogether too broad, if not functional"; and the authorities are familiar which forbid a construction of claims allowed which will make them equivalent to broader claims rejected.

·· It does not follow from this construction of the claims that Brush "secured by his patent the mere shade of an idea,—a wholly immaterial and useless feature." It is still possible to give his patent the benefit of a liberal, though not unrestricted, application of the doctrine of equivalents, and to bring under it merely colorable departures from the terms of its claims. In the case against the Ft. Wayne Electric Co. (44 Fed. 284), for instance, a device in which one set of carbons was at first separated by hand was declared an infringement, though it is to be observed that it was so held "because it clearly appears from the proof and operation of the machines, as exhibited upon the hearing of the motion, that, if the attendant did not latch up the upper carbon of one pair, the machine itself would automatically do so, the same as it is done in the Brush lamp." It is easy to conceive a mechanism which at first, and for a short while, would lift the carbons simultaneously, and allow them to burn alternately, as in the Day lamp, and then produce a distinct and wider separation of one pair, leaving the other set to burn until consumed, when, as in the Brush patent, the pair which had been held in separation would come into play. But such an attempt at evasion would hardly be allowed to succeed. Again, if it be true, as contended, that the carbons in the Brush lamp, as described and illustrated, are operated by a single mechanism, the fact is not mentioned in the claims, and, by a liberal construction, the Monitor and Twin lamps, it might be said, do not escape infringement merely because in them each pair of carbons is moved by a separate mechanism, connected with the other only by the electric current which passes through both. Those lamps and the Scribner lamp, we agree with the court below in holding, do not infringe, because, instead of the dissimultaneous initial separation, which we consider an essential feature of the Brush lamp, they have a distinctly simultaneous initial separation, which deprives them of the advantage asserted in Brush's specification to result from the formation of the first arc between a predetermined pair of carbons, and, on the other hand, secures for them the advantage of arcs of equal length between both sets of carbons, which in the Brush lamp, it seems, is not effected.

The contention that there has been infringement even if the patent be limited to the initial separation of the carbons, because it is physically impossible that two sets of carbons shall "be separated at one and the same electrical instant of time," is manifestly fallacious, though the physical fact be conceded. The separation contemplated in the Brush patent is certain, controlled, and predetermined; and, in so far as there may be a failure to effect a simultaneous separation by the mechanism in the lamps of the appellee, it is uncontrolled and not intended.

In respect to the invention covered by this patent, Brush was not, in the broad sense, a pioneer, though, doubtless, by reason of his prior inventions, he may have been "justly regarded as having done more than any one else to make electric arc lighting on a large scale a practical success." In support of the application for this patent his attorneys, before the commissioner of patents, insisted that the real invention was "broadly a principle, or a method of moving the

carbons in a lamp," and that that "mode per se" was the true invention sought to be protected; but it is clear that the patent as granted is for a mechanism only, and while, under a liberal application of the doctrine of equivalents, "if the device is appropriated in its essential features it will be an infringement, notwithstanding some change in the location and relation of parts," even though a doubtful function of little comparative worth be eliminated (Western Electric Co. v. Sperry Electric Co., 7 C. C. A. 164, 173, 58 Fed. 186, 195, and 18 U. S. App. 177), yet the proposition enunciated in Temple Pump Co. v. Goss Pump & Rubber Bucket Manuf'g Co., 7 C. C. A. 174, 182, 58 Fed. 196, 204, and 18 U. S. App. 229, is not inapplicable, namely:

"That when a device designed merely for the improvement of a well-advanced art is described as having particular features of construction, which are adapted to accomplish specific results or modes of operation, and the claim of the patent is for that device, the features so described are covered by the claim, and may not be rejected, or treated as of secondary importance, in order to extend the patent over other forms or features not described."

The decree of the circuit court is affirmed.