## AUSTRALIAN KNITTING CO. v. GORMLY.

### (Circuit Court, N. D. New York. May 23, 1905.)

1. PATENTS—SUIT FOR INFRINGEMENT—RES JUDICATA.

A decree of a Circuit Court sustaining the validity of a patent, and awarding a permanent injunction against infringement, and referring the case to a master for an accounting as to damages and profits, is interlocutory, merely, and not final, and is not conclusive of the validity of the patent in a subsequent suit between the same parties prior to the rendition of final decree in the cause, although, on appeal from such interlocutory decree, it has been affirmed by the Circuit Court of Appeals.

2. SAME—PERSONS BOUND BY DECREE.

A manufacturer of an alleged infringing article, who voluntarily assists a purchaser from him in defending a suit for infringement of the patent by the use of such article, but who is not a party to the record, and is not shown to have assumed control of the defense, is not directly interested in the case, and is not concluded as to the validity of the patent by a decree in favor of the complainant, so as to be estopped thereby from setting up new defenses in a subsequent suit against him for its infringement by making and vending the same article.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 1190–1194.]

3. SAME—PRIOR USE—KNITTING MACHINES.

The Kinsey patent, No. 424,314, for a burr-wheel for knitting machines, is void for prior public use of the alleged invention by others.

Action in equity brought by the Australian Knitting Company against Robert W. Gormly, a manufacturer of knitting machinery, for alleged infringement of United States letters patent No. 424,314, granted March 25, 1890, to Peter S. Kinsey, assignor to the complainant, for burr-wheels for knitting machines. These burr-wheels are adapted for knitting machines adapted to produce figured or pattern knitting. In the specifications the patentee says:

"Burr-wheels of the kind referred to have been previously made which comprised blades set obliquely on the periphery of the burr-wheel hub, and so secured upon the hub that spaces are left between the blades. After the blades have been secured upon the hub, certain of them have had the spaces between them filled up by means of solder, lead, or similar soft metal run in in a molten state, where it becomes a fixture, and secures together the blades between which it is run. Burr-wheels thus constructed, when once the spaces between the blades have been filled in by the soft metal, cannot be used for any pattern other than that for which they were originally constructed, for which reason it has been necessary to construct separate burr-wheels for each separate pattern which was desired. By my improvement I obviate this difficulty, for I so construct certain of the burr-wheel blades that their positions may be changed in any desired manner to produce any given pattern, thus making it possible to produce a great number of patterns with the same burr-wheel. The invention consists in making certain of the blades of which a burr-wheel is composed with enlargements upon one side thereof, which enlargements form part of, or are integral with, the blades upon which they are formed, and which enlargements are of such thickness that when the blades are arranged upon the burr-wheel hub the enlargements will substantially fill the spaces between the blades upon which they are formed and the next adjacent blades upon one side. It is, of course, to be understood that the object of filling certain of the spaces between the burr-wheel blades is that, when the knitting machine cylinder containing the needles is revolving, such of the needles as come in contact with the closed

spaces of the burr-wheel will have their barbs pressed in, so that a stitch will be cast off. Such of the needles, on the contrary, as come opposite the open spaces between the burr-wheel blades will mesh into such spaces without pressing in the barbs, and from such needles the stitches will not be cast off."

The claim is as follows:

"The combination, with a hub having obliquely-extended slots upon its periphery and provided with a recess in its upper face, of blades made to enter said peripheral slots and said recess in the hub top, certain of said blades each having thickened portions or enlargements upon one of its sides, and a cap constructed to be passed down over the hub and upper ends of the blades and secured to the hub, substantially in the manner as and for the purposes set forth."

About April, 1900, the complainant here learned, as he claims, that the patent in question was being used without license by the manufacturers of knitted goods, and that the alleged infringing burrs came from Tompkins Bros., of Troy, N. Y. The defendant, Robert W. Gormly, was then employed by Tompkins Bros. The complainant caused notices to be sent these manufacturers, calling attention to the patent in suit. It is alleged that notice was given Tompkins Bros. and the present defendant. Gormly had referred the question of the validity of the patent in question to Mosher & Curtis, and that firm had given an opinion that the patent in suit here was invalid. Their communication said:

"Positively, the only thing that Kinsey did was to take one of Swits Conde's thickened blades and insert it in a Kavanaugh burr, which involved no invention, and was clearly unpatentable, and it may be said with absolute certainty that no court would ever sustain such a patent."

Mosher & Curtis also informed Mr. Preble by letter that the communication of the complainant to Mr. Gormly had been handed to them for reply. They said:

"We will look the matter up and report to you the result of our investigation as soon as we can conveniently do so."

May 26, 1900, Mosher & Curtis informed Mr. Preble that they had examined the patent now in suit, and had advised their client, Mr. Gormly, that the blades manufactured by him did not infringe the patent, in view of patents to Kavanaugh, No. 117,299, July 25, 1871, and Conde, No. 240,008, April 12, 1881. This letter also contained this statement:

"Mr. Gormly instructs us to inform you that if your clients believe that he is infringing upon any of their rights, he is able and willing to respond to any action they may bring against him for redress; and that he will use every lawful means to prevent interference with or intimidation of his customers."

June 9, 1900, Mosher & Curtis wrote Mr. Preble that they understood he had sent threatening letters to the users of Mr. Gormly's patented blade for burr-wheels subsequent to the letter of May 26th, and they say in reference to that letter, "in which we clearly pointed out that the Kinsey patent is void." They further say:

"For the purpose of removing every possible excuse for such methods of doing business we hereby notify you that we are authorized to and will appear for Mr. Gormly in any action you may desire to bring against him to test the validity of the Kinsey patent, without putting you to the expense or trouble of serving a subpœna, and we will do everything in our power to expedite matters so that you may be able to have the validity of the Kinsey patent adjudicated in the shortest time possible."

June 12, 1900, Mosher & Curtis wrote Mr. Preble, referring to his statement that he had no reason to doubt the validity of the Kinsey patent, and expected to bring suit, etc., and Mosher & Curtis say:

"Mr. Gormly has himself, made all the blades which have been manufactured under his patent, the blades being put on the market by Tompkins

Bros. Mr. Gormly is perfectly responsible and abundantly able to answer for any damages sustained by your client. As we wrote you before, we will appear for Mr. Gormly on receipt of copy of your complaint, waiving the formality of service by subpœna."

In the fall of 1900 the Australian Knitting Company, of which said Peter S. Kinsey was president, brought action for the infringement of the patent in question against Wright's Health Underwear Company, a corporation organized under the laws of the state of New Jersey. This action was put at issue by the defendant, and among the defenses it was set forth that the alleged invention covered by the Kinsey patent was in public use and on sale in this country by Kinsey and others for more than two years before the application for the patent, and that the said invention for more than two years prior to the application for the patent had been shown and described in various printed publications and patents—especially the Kavanaugh patent and the Swits Conde patent—and that such alleged improvements and inventions had been invented, known, and used by various parties named for more than two years prior to the application for a patent, and also set up the defense that the said letters patent sued upon were invalid for want of invention and for want of patentable novelty. The issues formed were tried before Hon. Hoyt H. Wheeler in the Southern District of New York, and his decision was filed February 19, 1902, in which he found:

"The defenses relied upon in the brief and argument are principally patent No. 240,008, dated April 12, 1881, and granted to Swits Conde, for a burr for knitting machines, which is said to show such a cam on some of the blades for that purpose; lack of adequate proof of infringement; and laches. The Conde patent is said to show some blades with such cams upon them by the drawings. There are drawings of blades which might, if set out by corresponding description, be understood to show such cams upon, and as a part of, them. But the description says. 'One of said burrs being of the ordinary construction and filling every needle with thread, while the other has a certain number of the interstices between its thread-lifting teeth or wings filled with a block which presses against and closes the beards of certain needles, and thus causes its thread to skip over the said needles, carrying the single thread applied thereto by the other aforesaid burr;' and the claims include 'the filling-block, c, arranged between the said two series of wings.' What are shown in the description and claim are interstices filled with blocks between, not a part of, the blades or wings. What the patent shows is what it sets forth as a whole; and what appears on a drawing, that might be what is described or something else, would well be taken to be what is described, especially as that was a thing well known. This invention cannot, therefore, be justly said to be described or shown in that patent. The date of use shown by the parol evidence is not sufficiently clear as having been before Kinsey's invention to overthrow a patent, and appears to have been properly omitted from the defendant's points."

An interlocutory decree was entered March 1, 1902, in pursuance of that decision. An appeal was taken from such interlocutory decree, and same was affirmed, the court saying:

"We are convinced that the proof fails to show prior use beyond reasonable doubt. The defense of laches has not been clearly established. It depends largely for its support upon inference and conjecture. The facts are capable of a construction consistent with due diligence on the part of the appellee. The stipulation entered into by counsel for appellant in connection with the other evidence in the case, clearly establishes infringement. The only question which we regard as at all serious arises upon the Conde patent, but after careful consideration, we are satisfied with the interpretation of the patent by the circuit judge. Figs. 4 and 5 of the drawings, considered alone, may fairly be said to show the enlargement or cam attached to the blade. But there is nothing in the description to support such an interpretation. In fact, the language there used would seem to indicate that the enlargements used were the well-known filling blocks of the prior art. The claim, too, is in accord with this interpretation, as it speaks of the blocks as separate and

distinct structures, namely, the 'filling-blocks, c, arranged between the said two series of wings.'"

Thereupon the defendant in that suit, Wright's Health Underwear Company, petitioned for an order recalling the mandate of the court for modification, or for an order granting leave to the Circuit Court to grant a rehearing and consider newly discovered evidence. The defendant set forth in affidavits the nature of the newly discovered evidence, and there were used on the motion the affidavits of George A. Mosher, Frank C. Curtis, David C. Philip, James A. Shufelt, and Thomas D. White. Thereupon the Circuit Court of Appeals denied the motion to recall the mandate and amend the instructions to the court below so as to permit that court to order a rehearing and consider newly discovered evidence, "because it has not been satisfactorily made to appear that the defendant could not have discovered the new evidence if reasonable diligence had been exercised." The mandate was then filed in the Circuit Court and the case went to an accounting before a master. No final decree has yet been granted. Soon thereafter this action was brought against Robert W. Gormly. The defendant in his answer sets up and relies upon the following alleged new defenses: (1) The model Conde burr 1881, by itself, is a prior public exhibition, and disclosure of the alleged invention; (2) prior use in the Conde Mill, in connection with the Conde burr 1881, on exhibition in the Patent Office; (3) prior publication in the Conde patent in connection with the Conde burr 1881, on exhibition in the Patent Office; (4) prior use in the Pioneer Mill; (5) inoperativeness in the construction shown and described in the patent in suit. The complainant insists that the defendant here, Robert W. Gormly, took such part in the defense of the suit against Wright's Health Underwear Company, and was so connected therewith, that he is bound by the interlocutory decree entered in that action, and is estopped from making these defenses in this suit. Attention will be called later to just what occurred, and more particularly to the nature of the evidence adduced, on the trial of this action that was not before the court in the suit against the Wright's Health Underwear Company.

W. P. Preble, Jr., for complainant.
Mosher & Curtis, for defendant.

RAY, District Judge (after stating the facts as above). If the interlocutory decree in the Australian Knitting Company v. Wright's Health Underwear Company is res adjudicata between the Australian Knitting Company and Robert W. Gormly in this action, it will be unnecessary to consider the evidence bearing on the question of the validity of complainant's patent. The same patent in question there is in controversy here, and the same general question was raised there as here, viz., are United States letters patent No. 424,314, granted March 25, 1890, to P. S. Kinsey, assignor to the complainant, invalid by reason of prior public exhibition and disclosure of the alleged invention? In that suit the defendant here was called as a witness, and said, in substance and effect, he was defending it. The cause of action was the assertion by the plaintiff that he is the owner of certain letters patent granted by the government of the United States (the letters in question here), giving him a monopoly or exclusive right, as against all the people of the United States, including that defendant and the defendant here, to make, use, and vend a certain improvement in burr-wheels for knitting machines; that the defendant in that suit had invaded and was continuing to invade that right, to the great damage of the plaintiff, in that it had "unlawfully and wrongfully made, used, and sold to others to be used, burr-wheels for knitting machines

made according to and embodying the invention," and was threatening to make and sell, etc., in large quantities, and supply the market. The complainant demanded an injunction restraining such acts and threatened acts, and an accounting as to damages suffered, and a judgment therefor. This is a cause of action going beyond a mere recovery for damages sustained by reason of the tort. The defendant there was not a manufacturer of the alleged infringing article, but merely a user thereof. Robert W. Gormly, the defendant here, was the maker, and he sold to Wright's Health Underwear Company, that defendant, for use. That defendant was in no sense the agent of Gormly, the maker. But when the plaintiff notified the defendant in that prior action that it was infringing the patent, Gormly at once notified it, as well as others, that complainant's patent was void and that he would defend all suits for alleged infringement thereof; and, when suit was brought, Gormly did defend, not by being made a party to the record, but by employing counsel, procuring witnesses, and doing other like acts. But it does not appear that he put himself in such a position that he could control or direct the defense or appeal in the event of a holding in favor of the validity of the patent.

The exact relation of Gormly to the defense of that action does not appear further than he testified in that action, and it is conceded in this action that Gormly undertook the defense of that action. It also appears that Mosher & Curtis represented the defendant, Wright's Health Underwear Company, in that action, and that said firm of attorneys represented Gormly in conducting the correspondence, etc., prior to the bringing of that suit. The cause of action in this suit against Gormly is for an alleged infringement or alleged infringements of the same patent relied on by the complainant in such prior suit, but the infringing acts are different, in this: that the infringement charged against Gormly in this action is the making and selling of the alleged infringing burr or device—the same device, as to form and construction, alleged to constitute an infringement in the suit against Wright's Health Underwear Company. The cause of action in the former suit was the infringement of the Kinsey patent by the using of the burrs in question, manufactured by Gormly. The cause of action in the present suit is the infringement of the same patent by the making and selling of such burrs— the alleged infringing devices. Gormly made the burrs used by the defendant in the former action, and the use of which constituted the cause of action against that defendant. Gormly was interested in the result of that action, for, if it was determined in that action that the burrs used by the defendant infringed the complainant's patent, an injunction would issue against that defendant, restraining the use of such burrs, and that defendant would no longer purchase either from Gormly or from others the burrs made by Gormly.

Greenleaf, in his Treatise on the Law of Evidence, vol. 1, § 523, says:

"Under the term 'parties,' in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment. This right

involves also the right to adduce testimony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded as strangers to the cause."

This statement has been frequently cited and approved by the Supreme Court of the United States. Litchfield v. Goodnow, 123 U. S. 550, 8 Sup. Ct. 210, 31 L. Ed. 199; Lovejoy v. Murray, 3 Wall. 1, 19, 18 L. Ed. 129; Robbins v. Chicago City, 4 Wall. 657, 673, 18 L. Ed. 427; Green v. Bogue, 158 U. S. 503, 15 Sup. Ct. 975, 39 L. Ed. 1061.

In Green v. Bogue, supra, the court, at page 503 of 158 U. S., page 985 of 15 Sup. Ct. (39 L. Ed. 1061), said:

"Parties, in the larger legal sense, are all persons having a right to control the proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision if an appeal lies."

In Railroad Co. v. National Bank, 102 U. S., at page 21, 26 L. Ed. 61, Harlan, J., in giving the opinion of the court, holding that the railroad company was not bound by a certain judgment, said:

"Being, however, an entire stranger to the record, it had no opportunity or right in that proceeding to controvert the claim of the bank, to control the defense, to introduce or cross-examine witnesses, or to prosecute a writ of error to the judgment."

In Hauke v. Cooper, 108 Fed. 922, 48 C. C. A. 144, it was held:

"A decree in a suit involving the title to land, sustaining the validity of a defendant's title, is conclusive on one who, although not nominally a party, was directly interested in the subject-matter, and by agreement controlled the suit on behalf of the adverse party through counsel employed by him, and, if successful, would have shared in the benefits of the decree; and the defendant is entitled to plead such decree as an estoppel against the plaintiff in a subsequent action brought to recover the same land by one to whom such person conveyed his interest after the decree was entered, the question of fact as to the interest in and control of the prior suit by plaintiff's grantor being one for the jury."

In that case the court quoted with approval section 174 of Freeman on Judgments. Among other things it is there said:

"Whenever one has an interest in the prosecution or defense of an action, and he, in the advancement or protection of such interest, openly takes substantial control of such prosecution or defense, the judgment, when recovered therein, is conclusive for and against him to the same extent as if he were the nominal as well as the real party to the action."

In Theller v. Hershey (C. C.) 89 Fed. 575, it was held:

"A pleading setting up a former judgment between plaintiff and a third party as binding on defendant need not allege in terms that defendant had such control of the former action as to be bound by the judgment, but is sufficient if the facts pleaded warrant such conclusion by the court. One who, being interested in the subject-matter of an action for infringement of a patent, contributes towards the defense of such action, and agrees to pay a share of the expenses and costs, becomes privy thereto, and is bound by the judgment."

In the opinion in that case the judge said:

"Parties include not only those whose names appear upon the record, but all others who participate in the litigation by employing counsel, or by contributing towards the expenses thereof, or who in any manner have such control thereof as to be entitled to direct the course of proceedings therein. Thus it is said in 3 Rob. Pat. § 1176: 'Where several defendants, by agree-

138 F.—7

ment, contest one of the actions in their joint behalf, all become thereby parties to the suit, and are equally concluded by the judgment.' The law is well settled that parties and privies include all who are directly interested in the subject-matter, and who had the right to make defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment. United States & Foreign Salamander Felting Co. v. Asbestos Felting Co. (C. C.) 4 Fed. 816; Miller v. Tobacco Co. (C. C.) 7 Fed. 91, 93; Claflin v. Fletcher (C. C.) Id. 851; American Bell Tel. Co. v. National Improved Tel. Co. (C. C.) 27 Fed. 663, 665; Eagle Mfg. Co. v. David Bradley Mfg. Co. (C. C.) 50 Fed. 193, 195; Id., 6 C. C. A. 661, 57 Fed. 980, 990, and authorities there cited; Lovejoy v. Murray, 3 Wall. 1, 18, 18 L. Ed. 129; Robbins v. Chicago City, 4 Wall. 657, 672, 18 L. Ed. 427; Walk. Pat. (2d Ed.) § 468."

In David Bradley Manufacturing Co. v. Eagle Manufacturing Co., 57 Fed. 980, 6 C. C. A. 661, it was held:

"Where a suit for infringement of a patent is brought against a firm that is a branch of the company that manufactures the infringing device, and such company conducts the defense, raising the question of validity of the patent, a decree for complainant is conclusive as to the validity of the patent as against the company conducting the defense, even in regard to alleged anticipations not referred to in the suit, since, under the issues, all anticipatory inventions might have been shown in defense. 50 Fed. 193, affirmed. Such decree is none the less conclusive because it was merely interlocutory at the bringing of the suit in which it is set up as a bar, and subsequently ripened into a final decree."

In the opinion, at page 985 of 57 Fed., page 665 of 6 C. C. A., the court said:

"The suit in the Circuit Court of the United States for the Southern District of Iowa was brought to restrain the infringement of the same claims of the same patent here in question. The defendant there was the agent of the present appellant in the sale of the infringing machines. The defense of the suit there was assumed and prosecuted by the appellant here. The appellant was in fact the real party to that litigation, and, so far as the decree there is res adjudicata, is as effectively concluded thereby as if it were the actual defendant to the record. Lovejoy v. Murray, 3 Wall. 1, 18, 19, 18 L. Ed. 129; Robbins v. Chicago, 4 Wall. 657, 672, 18 L. Ed. 427."

In Robbins v. Chicago City, 4 Wall. 657, 18 L. Ed. 427, it was held:

"Parties having notice of the pendency of a suit in which they are directly interested must exercise reasonable diligence in protecting their interests, and if, instead of doing so, they willfully shut their eyes to the means of knowledge which they know are at hand to enable them to act efficiently, they cannot subsequently turn round and evade the consequences which their own conduct and negligence have superinduced. The term 'parties,' as thus used, includes all who are directly interested in the subject-matter, and who had a right to make defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment."

In Sacks v. Kupferle (C. C.) 127 Fed. 569, it was held:

"Where a suit for infringement against a dealer in the alleged infringing article was defended by the manufacturer of such article at his own cost, and on appeal it was adjudged that complainant was not the original inventor, and that his patent was void, such adjudication is a bar to a subsequent suit directly against the manufacturer on the same patent."

In Penfield et al. v. C. & A. Potts & Co., 126 Fed. 475, 61 C. C. A. 371, it was held:

"Where the defendants in a number of separate suits for infringement of the same patent joined in defending each suit, contributing equally to the

expense, and stipulating with the plaintiff that all evidence taken should be used in all the cases, which fact was known to the plaintiff, all such defendants are concluded by the final decree first rendered in any one of the cases as to issues which are identical and are to be determined on the same evidence; and, estoppel by judgment or decree being mutual, the plaintiff is likewise concluded to the same extent in all the cases."

In Ætna Life Ins. Co. v. Board of Commissioners of Hamilton County, Kan., 117 Fed. 82, 54 C. C. A. 468, it was held:

"A former judgment, based upon a general finding for the defendant, which does not disclose which one of several defenses therein was sustained, constitutes an estoppel of the plaintiff therein from maintaining a second action between the same parties upon different causes of action, in which the same defenses are interposed and the same issues are presented that were made in the earlier action, unless he makes it appear by pleading or proof that some new and determining issue or matter is involved in the second action that was not or may not have been litigated or decided in the first.

"Where the same issues are made and the same defenses are interposed in both actions, and there is no pleading or proof that any new determining issue, matter, or right is involved in the second action, it is not material upon which defense or issue the former judgment was based, because an opposite judgment cannot be rendered without relitigating at least one defense and issue determined in the former action, and overruling the decision upon it there rendered.

"Where the record is such that there is or may be a material issue or matter that may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel, unless by pleading or proof the party asserting it establishes the fact that the issue, right, or matter in question was actually and necessarily litigated and determined in the former action.

"When the second suit is upon a different cause of action, but between the same parties, as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive as to other matters which might have been, but were not, litigated or decided."

It is insisted by the defendant here that the decree rendered in the former suit by this complainant against Wright's Health Underwear Company is interlocutory, merely, and therefore not res adjudicata or an estoppel, even if the court finds that the defendant here assumed the defense of that action to such an extent that he had the right to control it, offer evidence, examine and cross-examine witnesses, and take an appeal. This court is of the opinion, in view of the fact that the defendant here does not deny that he assumed the defense of the prior action to such an extent that he controlled it, that it is established that Gormly did assume the defense of that action, and did have the right to control it and employ counsel therein, and examine and cross-examine witnesses, and take an appeal. This being so, we come to the question whether the decree granting an injunction and an accounting made by the Circuit Court, and appealed from and affirmed by the Circuit Court of Appeals, is interlocutory, merely, or final, on the question of the validity of the patent in question, and the question of infringement by the making and selling or using of the alleged infringing article; that is, is it a final decree in the sense that it is either an estoppel or strictly res adjudicata as to the defendant Gormly?

In Brush Electric Co. v. Western Electric Co., 76 Fed. 761, 22 C. C. A. 543, it was held by the Circuit Court of Appeals, Seventh Circuit, that:

"A decree awarding a perpetual injunction in a patent suit, but with an order of reference to a master to ascertain the damages suffered by the infringement, is an interlocutory, and not a final, decree, and therefore does not operate as an estoppel in a subsequent suit."

It will be noted that in that case there had been no appeal to the Circuit Court of Appeals.

In Harmon v. Struthers (C. C.) 48 Fed. 260, it was held:

"In a suit for infringement of letters patent there was a decree for plaintiffs, awarding an injunction, and for an account, and a reference to a master. The defendants quit using the device so held to infringe, substituting a different device, which was openly used by other persons, and as to which there had been no adjudication. Then, pending the reference before the master, the plaintiffs brought a new suit in the same court against the same defendants. The answer therein not only denied infringement, but alleged that one G., and not the patentee, was the original and first inventor of the patented device, which defense was not set up in the first suit. *Held*, that the decree was interlocutory, and did not, in the second suit, preclude inquiry into the validity of the patent."

In Roemer v. Neumann (C. C.) 26 Fed. 332, it was held:

"An interlocutory decree, entered pro confesso, finding the patent valid, awarding an injunction, and referring the case to a master to take an account of profits and damages, is not definitive. No appeal lies from it, and it is still in the control of the court.

"In a prior suit between the same parties, an interlocutory decree, pro confesso, awarding an injunction and a reference to a master, had been entered, and a release of profits and damages signed. In a subsequent suit between the same parties, exceptions setting up this decree as an estoppel were overruled, in the absence of an express authority on the question; and held that, where there is a doubt in such a case, it ought to be resolved against the party urging the estoppel."

In neither of these cases was an appeal taken from the interlocutory judgment of the Circuit Court to the Circuit Court of Appeals.

In Bissell Carpet Sweeper Co. v. Goshen Sweeper Co., 72 Fed. 545, 19 C. C. A. 25 (Sixth Circuit), the Circuit Court of Appeals held and decided:

"The decrees and mandates of the Circuit Courts of Appeals have precisely the same finality as the decrees and mandates of the Supreme Court. Whatever is before the court by virtue of the appeal, and is disposed of by it, is finally settled, and becomes the law of the case, so that the court below must carry it into execution according to the mandate, without power to modify, reverse, enlarge, or suspend it.

"Where, on appeal from interlocutory decree granting a perpetual injunction, the court necessarily examines and determines the entire merits of the cause, its power to decree is not limited to the matter of the injunction alone, but extends to the whole merits, and its decision is final and conclusive on every point actually decided. Consequently the court below has no power to modify in any respect a decree which is thus affirmed, but must give it full effect in the very terms of the decree of the appellate court. Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, 17 L. R. A. 615, and Marden v. Manufacturing Co., 15 C. C. A. 26, 67 Fed. 809, followed. Watch Co. v. Robbins, 3 C. C. A. 103, 52 Fed. 337, overruled."

In the opinion of the court at pages 554 and 555 of 72 Fed., pages 34 and 35 of 19 C. C. A., it is said:

"It is equally clear that, by allowing an appeal from an interlocutory decree, Congress intended to allow an appeal from a perpetual injunction ordered and allowed upon a final hearing of the merits, where the same decree refers the cause to a master for an accounting. This construction of the act has been, so far as we know, universally accepted by the Circuit Courts of the United States and by the Circuit Courts of Appeals. * * * When the appeal is from a decree determining the merits, awarding a perpetual injunction, and referring the cause to a master for the simple purpose of reporting damages for infringement, there can be no proper review or re-examination of so much of the decree as awards the injunction that does not include the basis upon which it was granted. Thus, though the 'injunction is the backbone of the jurisdiction,' as pithily observed by Judge Putnam in Marden v. Manufacturing Co., supra, yet the appeal necessarily brings up the full record, and places us in full possession of the entire case, so far, at least, as a remedy by injunction was the foundation of the jurisdiction below. It follows, therefore, that if the court finds it essential to pass upon the merits of the case in order to determine the propriety of the injunction, and in no way reserves to the lower court a right to review or re-examine the grounds upon which it had originally proceeded, the decision of this court becomes the law of the case. If that decision was an affirmance of the decree below, that decree becomes the decree of this court, and is no longer open to review, rehearing, or modification, for it has become the settled law of the case. A second appeal can only involve matters subsequent to the decree, for this court, after term passed, has no power to review, rehear, or re-examine its own decrees. This rule of practice and procedure is in accord with the usages and practice of appellate courts obtaining jurisdiction through appeals from decrees, interlocutory in character, which determine the rights of the party appealing."

And at page 560 of 72 Fed., page 40 of 19 C. C. A., the court further says:

"The conclusion we have reached is in the line of the relief intended by Congress to be afforded suitors whose rights are affected by temporary submission to an inconclusive decree. The right to appeal at that stage of the cause is optional. If one affected by the action of the court in allowing, dissolving, or continuing an injunction, see fit, he may await a final decree, and then appeal. But if he elects to appeal, with the result that another inconclusive decree is rendered, his last estate is no better than his first, for he must proceed with the cause, and submit until he can again appeal. The statutory purpose was to save the litigants from being obliged to submit to the injury incident to an inconclusive decree, and to all the expense of an accounting. But if, after an appeal, resulting in an inconclusive affirmance, he must still proceed with an accounting, which, after all, may prove unnecessary, the statute will have amounted to little. The doctrine of res adjudicata rests upon the maxim that there should be an end to litigation. No doctrine rests upon sounder principles of public policy, or is more entitled to a wide application. If, under an appeal from a decree awarding an injunction, this court obtains such a record as to enable it, with justice to the parties to the appeal, to hear and consider the merits of the cause, it would be most anomalous if we have not the power to decide. The judicial function of considering involves the function of determining. The decision of an appellate court is final, and no second appeal is maintainable, except as to matters reserved or proceedings subsequent to the first appeal."

It may be that in Bissell Sweeper Co. v. Goshen Co., 72 Fed. 545, 19 C. C. A. 25, 43 U. S. App. 47, it was not intended to hold that the affirmance by the Circuit Court of Appeals of an interlocutory decree holding a patent valid, and granting an injunction restraining infringements, and sending the matter to a master to take and state

the account, makes the judgment final as to the validity of the patent and as to all matters except profits and damages; but this court can give no other interpretation to the language of the court, and, in the absence of an intimation by another Circuit Court of Appeals to the contrary, would feel constrained to so hold. It expressly held that the Circuit Court of Appeals may affirm such a decree on the merits, and that when affirmed the holding becomes the law of the case, and that the Circuit Court can then only carry into effect the decision of the Circuit Court of Appeals. This being so, should the case come up on a second appeal from the final decree entered by the Circuit Court on the coming in and confirmation of the master's report, could the Circuit Court of Appeals reverse or modify its prior rulings in the same case affirming the interlocutory decree first entered and appealed from, and which also necessarily established the validity of the patent? This would be giving to the Circuit Court of Appeals in such a case the power to reverse its own decree on a given point, or all points, in the same case made at a prior term. The court said:

"Upon affirming such a decree [interlocutory decree of the Circuit Court], the Circuit Court of Appeals is not called upon to determine the effect of the affirmance, should the case be again appealed after the accounting of profits and damages has been stated and confirmed. A second appeal, moreover, can only involve matters subsequent to the decree of the Circuit Court of Appeals, for that court, after the term has passed, has no power to review, rehear, or re-examine its own decrees." And again: "The decision of an appellate court is final, and no second appeal is maintainable, except as to matters reserved or proceedings subsequent to the first appeal."

This decision seems to be approved in Smith v. Vulcan Iron Works, 165 U. S. 523, 17 Sup. Ct. 407, 41 L. Ed. 810, although the only question really decided there was that on such an appeal in a patent case the Circuit Court of Appeals may decide the case on the merits, and render or direct a final decree dismissing the bill. If it may do that, and reverse and dismiss, giving a final judgment against the complainant, why must not its affirmance of such a decree be regarded as final? If this be the law, then the affirmance of the judgment in this case under consideration by the Circuit Court of Appeals made the judgment of affirmance entered by direction of that court final, and we now have a final, and not an interlocutory, judgment, establishing and declaring the validity of the complainant's patent. If so, and if Gormly is to be held a party (in the broad sense) to that action and judgment, then there is the end of this case, for, when the strict doctrine of res adjudicata applies, the judgment is final and conclusive not only as to all questions actually decided, but as to all that might have been raised and litigated. Hence, if such be the case, the new defenses now urged, not pleaded in that prior action, cannot be urged here, as they might have been presented and passed upon then. But the Circuit Court of Appeals in the Seventh Circuit, October, 1896, did not so understand the decision in Bissell Carpet Sweeper Co. v. Goshen Sweeper Co., supra, for in Brush Electric Co. v. Western Electric Co., 76 Fed. 761, 22 C. C. A. 543—a patent case, where the

patent was upheld, and an injunction granted, and an appeal taken —the court said, as to the defense of a prior decree between the same parties regarding the same patent:

"The decree in the Toledo Case awarded a perpetual injunction, but with an order of reference to a master to ascertain the damages by reason of infringement; and for that purpose the suit, it is conceded, is still pending. It is therefore only an interlocutory decree, and not available as an estoppel in respect to any issue in these suits."

In support of this statement of the law it cited Bissell Carpet Sweeper Co. v. Goshen Sweeper Co., 72 Fed. 545, 19 C. C. A. 25, from which the above quotations have been taken, and also the following cases: Barnard v. Gibson, 7 How. 650, 12 C. C. A. 857; Humiston v. Stainthorp, 2 Wall. 106, 17 L. Ed. 905; McGourkey v. Railway Co., 146 U. S. 545, 13 Sup. Ct. 172, 36 L. Ed. 1079; David Bradley Mfg. Co. v. Eagle Mfg. Co., 6 C. C. A. 661, 57 Fed. 980, and 18 U. S. App. 349; Jones Co. v. Munger Improved Cotton Mach. Mfg. Co., 1 C. C. A. 668, 50 Fed. 785, and 2 U. S. App. 188; Richmond v. Atwood, 2 C. C. A. 596, 52 Fed. 10, 17 L. R. A. 615, and 5 U. S. App. 151; Marden v. Campbell Printing Press & Mfg. Co., 15 C. C. A. 26, 67 Fed. 809, and 33 U. S. App. 123; Bissell Carpet Sweeper Co. v. Goshen Sweeper Co., 19 C. C. A. 25, 72 Fed. 545.

It is not necessary to call attention particularly or in detail to the inconsistency between the Carpet Sweeper Case, above commented on, and Marden v. Campbell Printing Press & Mfg. Co., 67 Fed. 809, 15 C. C. A. 26, where it is held that the appeal from the interlocutory decree in such a case in no way affects the right to an appeal from the final decree after an accounting.

That the decree of a Circuit Court sustaining a patent, declaring infringement, and sending the matter to a master to take and state an account of profits and damages, is interlocutory, and not final, is declared by the Supreme Court in McGourkey v. Toledo & Ohio Railway, 146 U. S. 545, 13 Sup. Ct. 172, 36 L. Ed. 1079, where it is said:

"It is equally well settled that a decree * * * or in equity establishing the validity of a patent, and referring the case to a master to compute and report the damages, is interlocutory merely."

And also in Smith v. Vulcan Iron Works, 165 U. S. 524, 17 Sup. Ct. 410, 41 L. Ed. 810, where it is said:

"But under the judicial system of the United States, from the beginning until the passage of the act of 1891 establishing Circuit Courts of Appeals, appeals from the Circuit Courts of the United States, in equity or in admiralty, like writs of error at common law, would lie only after final judgment or decree; and an order or decree in a patent cause, whether upon preliminary application or upon final hearing, granting an injunction, and referring the cause to a master for an account of profits and damages, was interlocutory only, and not final, and therefore not reviewable on appeal before the final decree in the cause."

After a review of all the cases, this court is constrained to hold, and does hold, that the decree entered in Australian Knitting Company v. Wright's Health Underwear Co., on the affirmance of the decree of the Circuit Court by the Circuit Court of Appeals sustain-

ing complainant's patent, is interlocutory, merely, and not final, as no final judgment has been entered or rendered by the Circuit Court, and the matter of the accounting is still pending before the master. That judgment may not be res adjudicata and conclusive on the defendant here, Robert W. Gormly, for another reason: Gormly was not a party in fact to that litigation, nor was he directly interested. He was interested, but not "directly interested." Nor was he represented in that case by Wright's Health Underwear Company. That company was not his representative in any sense, nor did Gormly, the defendant here, claim under or through that company. In this suit Gormly does not claim under or through that company, or succeed to its title or right. Had that company succeeded in securing a judgment dismissing the action, such judgment might have proceeded on the ground that the device used by it did not infringe the patent in question, or it might have proceeded upon the ground that the complainant's patent was invalid for various reasons. The defendant there set up certain defenses, and pleaded certain matters as showing prior use and publication, anticipation, etc.; but it did not plead certain matters which, if established as true, would have determined that action in favor of the defendant. Those matters the defendant there sought to set up after the decision by the Circuit Court of Appeals affirming the judgment on its petition to that court asking a recall of the mandate for modification, or for an order granting leave to the Circuit Court to rehear and consider newly discovered evidence. That motion was denied for the reason, said the court, "it has not been satisfactorily made to appear that the defendant could not have discovered the new evidence if reasonable diligence had been exercised." It therefore appears that the Circuit Court of Appeals did not consider the defenses now set up on the merits when it affirmed the judgment, and that it declined to allow the Circuit Court to consider such defenses on the merits because of the laches of that defendant in not discovering the facts at an earlier date.

But if Wright's Health Underwear Company had secured a judgment in that action dismissing the complaint on the defenses urged in that action, would such judgment bar or estop the complainant in this action from prosecuting it against the defendant, Gormly, for making and vending the alleged infringing device? It is well settled that estoppels, to be binding or effective, must be mutual. Mack v. Levy (C. C.) 60 Fed. 752. In other words, could Gormly effectively plead such judgment as res adjudicata against the complainant? Could Gormly say (1) "The subject-matter is the same;" (2) "The parties the same;" (3) "The causes of action are the same, identical;" (4) "In that action you were bound to set up and litigate all your defenses;" and, (5) "In that action it was determined that your patent is invalid, or that the device in question does not infringe"? The judgment, if for defendant, might have proceeded upon either ground. The question thus presented would seem to be reduced to this: Is a person who is only indirectly interested in a litigation, and who is not made a party, and who is not

represented by a party to the record who represents his interest, but who comes forward and defends because it may ultimately benefit him so to do, so represented in the suit that he is, for purposes of res adjudicata, to be regarded as an actual party to the record, and to such an extent that in all actions by such complainant against him involving the same cause of complaint and all the defenses that might have been pleaded and urged by the actual defendant, but in fact were not, such matters are to be deemed to have been finally adjudicated and determined between the complainant and the person so defending?

In Litchfield v. Goodnow, 123 U. S. 549, 550, 8 Sup. Ct. 210, 31 L. Ed. 199, it was held:

"The defense of prior adjudication is disposed of by the fact that Mrs. Litchfield was not a party to the suit in which the adjudication relied on was had. At the time of the commencement of the suit she was the owner of her lands, and they were described in the bill, but neither she nor any one who represented her title was named as a defendant. She interested herself in securing a favorable decision of the questions involved as far as they were applicable to her own interests, and paid part of the expenses, but there was nothing to bind her by the decision. If it had been adverse to her interest, no decree could have been entered against her personally either for the lands or the taxes. Her lands were entirely separate and distinct from those of the actual parties. A decree in favor of or against them and their title was in no legal sense a decree in favor of or against her. She was indirectly interested in the result, but not directly. As the questions affecting her own title and her own liability for taxes were similar to those involved in the suit, the decision could be used as a judicial precedent in a proceeding against her, but not as a judgment binding on her and conclusive as to her rights. Her rights were similar to, but not identical with, those of the persons who were actually parties to the litigation."

It will be noted that the Supreme Court places the decision on the facts that, while Mrs. L. owned a part of the lands described in the bill, "Neither she nor any one who represented her title was named as a defendant," and "she was indirectly interested in the result, but not directly," and "no decree could have been entered against her." The court also quotes with approval Greenleaf's Evidence, vol. 1, § 523, "Under the term 'parties,' in this connection, the law includes all who are directly interested in the subject-matter," and had a right to make defense, or to control the proceedings and to appeal from the judgment.

The decision in Litchfield v. Goodnow is in no wise weakened or broken by Plumb v. Goodnow's Administrator, 123 U. S. 560, 561, 8 Sup. Ct. 216, 31 L. Ed. 268. There Plumb was the actual owner of the land in question, but the title stood in the name of one Wade, and the defense was made by Plumb, the real owner—the one "directly interested." Again, Wade represented Plumb's title, and was a party on the record.

In Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859, held:

"When the jurisdiction of a controversy by a court is unquestioned, and the cause proceeds to final judgment, and no review is sought for, the judgment is conclusive upon the parties to the suit as to the matters decided, but not as to matters which might have been decided, but were not."

In Ætna Life Ins. Co. v. Bd. of Com'rs, 117 Fed. 82, 54 C. C. A. 468, the third headnote reads:

"Where the record is such that there is or may be a material issue or matter that may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel, unless by pleading or proof the party asserting it establishes the fact that the issue, right, or matter in question was actually and necessarily litigated and determined in the former action."

See, also, Empire S. N. Co. v. S. L. B. Co., 74 Fed. 864, 21 C. C. A. 152.

The right of the defendant to be heard in this case on his new defenses would seem to be implied from Johnson Co. v. Wharton, 152 U. S. 252, 14 Sup. Ct. 608, 38 L. Ed. 429. The syllabus is as follows:

"A judgment recovered in a Circuit Court of the United States in favor of the plaintiff by the owner of a patent right in an action against a licensee to recover royalties on sales of the patented article, where the sole defense set up was that the articles manufactured and sold by the defendant were not covered by the patent, in which the amount recovered was not sufficient to permit a review by this court, is a bar to an action in the same Circuit Court by the same plaintiff against the same defendant to recover like royalties on other like sales, where the same defense is set up, and no other, and the amount involved is sufficient to authorize a review here."

In Fayerweather v. Ritch, 195 U. S., at page 299, 25 Sup. Ct., at page 64, 49 L. Ed. 193, the court said, speaking of estoppel by judgment:

"But in order to make this finality rightful it should appear that the question was distinctly put in issue; that the parties presented their evidence, or at least had an opportunity to present it; and that the question was decided."

It seems to this court reasonably clear that, while Gormly is bound by the former judgment as to all questions actually raised in that case by the answer, he is not bound thereby so as to preclude him from presenting his new defenses here; that the judgment is only interlocutory; and, second, Gormly was not directly, but only indirectly, interested, and his rights and interests were not represented in that action.

In pleading defenses, it was not sufficient to merely allege that the patent of Kinsey was void. It was necessary to set up anticipation, prior use, want of patentable invention, etc., if relied on. See 3 Robinson on Patents, § 958.

The final question is that of the invalidity of complainant's patent because of the alleged new matters set up in the answer.

Burr-wheels, in the ordinary circular knitting machine, caused to rotate by the meshing of their peripheries, having teeth, so called, with the needles, co-operate with the needles in various ways for different purposes. The matters in question here relate to such burr-wheels as have some of the spaces between the blades or wings thereof filled or blocked. The patent in suit is for what is known as a "cut-presser," and defendant's device is for a "backing" wheel. The evidence shows that the one cannot do the work of the other. When the blades are arranged upon the wheel, in order to knit different patterns, it is necessary to have some of the spaces be-

tween the blades partly or wholly filled. Formerly this was done by running in solder or lead or some other metal in a molten state. It is obvious that when this was done the metal run in became fixed, as did the blades, and that, when it was desired to knit a new pattern, it was necessary to use a new burr wheel. On the other hand, it is obvious that if the blades were removable or detachable from the wheel proper, and certain of the blades had a projection or cam on the side thereof, at the proper place, either made integral with the blade, or made separately and attached by means of a rivet, and of such size or shape that such projection or cam would fill the space between the blades when in place, in the same way the metal run in would do, that different patterns could be knit with the same burr-wheel, and without changing it, by merely changing the blades, or the location or number of blades, having such projections or lugs. There were two old, well-known wheels—the Kavanaugh and the Allardice. These were well-known equivalents. Comparing the Kinsey patent in suit with the Kavanaugh, it is obvious from the evidence that the Kinsey patent shows the blocks applied to the blades of a Kavanaugh wheel. It is evident that the blade with the closing block or cam, so called, either soldered or riveted thereto, is the equivalent of the blade with the block or cam cast or wrought integral therewith, so far as the questions here are concerned. It would not be patentable invention to make such block or cam as a part of the blade, in place of soldering or riveting it thereto. The Allardice and Kavanaugh wheels, each with the blocks riveted to the blades, are equivalents. In the case against Wright's Health Underwear Company (C. C.) 115 Fed. 527, and 119 Fed. 921, 56 C. C. A. 451, it is evident from the opinions that the prior patent to one Swits Conde, No. 240,008, dated April 12, 1881, failed to be held an anticipation of the Kinsey patent in question here because it did not plainly show the closing blocks attached to the blades. The patent itself was in evidence, but not the Conde model burr of 1881, on file in the Patent Office at Washington years before the Kinsey patent was applied for, showing the blocks or cams attached to, and forming a part of, the blades. Nor was the present defense made, that the device covered by the Kinsey patent was in public use in the Conde Mill at Oswego, N. Y., and at Amsterdam, N. Y., for years before that patent was applied for or granted. On the evidence, which is substantially uncontradicted and unquestioned, it is proved beyond a reasonable doubt, and in fact beyond any question, that the alleged invention of the Kinsey patent was on public exhibition and in prior use, in connection with the Conde burr on exhibition in the Patent Office at Washington, for years before the Kinsey patent was applied for or granted. The memory of witnesses alone is not relied on. They come supported by notes made at the time, which evidently do not falsify. The evidence shows that Kinsey, the patentee, was in and about the mill where this device, patented by him subsequently, was in use, long before he applied for his patent. He was acquainted with the Kavanaugh and Allardice wheels, and the application thereto of the device in question. He borrowed the invention of

others, so far as there was invention, which had been abandoned to the public. This court has no doubt that had these defenses, supported by the evidence now adduced, been before the court in the Wright's Health Underwear Company Case, the decision there would have been the other way. This court is not at all inclined to differ from the decision of the court in that case on the defenses made and the evidence produced. In this case the court finds no evidence of a concocted story or "put-up" defense.

The defendant is entitled to a decree dismissing the bill of complaint, with costs.