JOSEPH T. RYERSON & SON, Inc., v.
BULLARD MACHINE TOOL CO. *
No. 350.

Circuit Court of Appeals, Second Circuit.
Aug. 12, 1935.

*Writ of certiorari denied 56 S. Ct. 308, 80 L. Ed. ——.

George I. Haight and M. K. Hobbs, both of Chicago, Ill., for plaintiff-appellant.

Merrell E. Clark and John Vaughan Groner, both of New York City, for defendant-appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit for infringement of United States patent No. 1,140,299 to Conrad M. Conradson, of which the plaintiff is assignee. The invention relates to an automatic multiple spindle lathe, designed to accomplish several cutting or drilling operations by having six chucks in which the work is secured not only rotatable upon their own axes, but also capable of bodily translation or planetary motion completely around the machine, stopping during each complete revolution at several "stations" at each of which a particular task is automatically performed. The specifications of the patent in suit disclose a large upright frame with a central vertical tubular shaft. At the bottom of this shaft, fixed in a frame which revolves around it, are six spindles, having at the top the work-holding chucks and at the bottom two gears of different sizes, one somewhat above the other. Also located around the base of the central shaft, but in a stationary position, are six geared shafts which may for convenience be called driving spindles, having two gears of different sizes on both the upper and lower ends. When the machine is in

operation, a particular work-holding spindle rotates or indexes successively from one driving shaft or station to the next; each one being rotated by the driving shaft, the upper gears of which mesh with the gears on the lower part of the work spindle shaft. The spindles thus are revolved only when at a station; while they are being indexed from one to another, they are completely disengaged. The six driving spindles which form the stations are all in turn driven from a central gear, concentric with the main vertical column, which is revolved by a pinion and bull gear arrangement at the base of the machine. Power to run the machine is applied to this pinion.

A variety of speeds at the various stations is desirable in a machine of this type, because heavy work, requiring slow speed, may be necessary at one station, and finishing work, requiring high speed, at another. Different speeds are made possible in the Conradson machine, by having two gears of different sizes on the lower part of the work spindle shaft and a correlating gear to mesh with each of them on the upper part of the driving shaft. The latter gears are slidably mounted and splined so that by a clutch device either set of gears can be brought into mesh. The same speed varying arrangement is provided between each driving shaft and the central gears. Thus, since for any given speed of the driving spindle the work spindle may be revolved at either of two speeds and since a choice of two speeds for the driving spindle is possible with any set speed of the main central pinion, four different chuck speeds within the machine are possible. Any variation of the speed of the main driving pinion will also change the speed of the chucks, but will not affect their speeds relative to each other. By placing the clutch at a station in an intermediate position, it is possible to disengage the gears completely. This can be done at any station, but it is customary to have a loading station constantly so arranged. At that station, while the work at the other stations is going on, the operator can remove a finished piece which has been entirely around the machine, and fasten a new piece into the chuck.

On the upper portion of the central shaft, and arranged to slide vertically upon it, is a tool holder or head, hexagonal in cross section, with tools to perform the desired operation at each station arranged in it. When the work-holding spindles arrive at a station, engage the driving gears, and begin to revolve, the head descends, and work at each station goes on simultaneously. When the tool head has reached the lower limit of its proper stroke, it is automatically raised, each work-holding spindle is advanced one station, and the head again descends. The tool head is moved by hydraulic means, as are other parts of the machine not involved here, such as the device for rotating the work spindles from station to station. The lower limit of the stroke of the tool head is controlled by a stop collar on the central column which is capable of screw adjustment. When the tool head comes in contact with the stop collar its downward motion is stopped, the hydraulic pressure which drives it increases, and an automatic reversal of direction thus effected raises the head.

Claims 1 through 7 of the patent in suit are general, and may be regarded as typified by claim 1, which reads as follows:

"1. In a multiple spindle lathe, a revolving carrier having a step by step movement, a plurality of revolving driving spindles having a stationary support, a plurality of work-holding spindles mounted in said carrier to revolve therewith and encircling said driving spindles and geared thereto to be revolved thereby, means for operating said spindles at variable speeds, and a tool carrier having a reciprocating movement toward and from said work-holding spindles, and tool holders mounted in said tool carrier to register respectively with said work-holding spindles."

Claims 29 through 32 refer to the stop collar device, and are typified by claim 29:

"29. The combination, with a revolving work carrier, of a reciprocating tool carrier, a central guide column for said reciprocating tool carrier and a normally stationary stop on said column in the path of said tool carrier for positively limiting the movement thereof toward said work carrier."

The appellant contends that the issues of validity and infringement have been conclusively adjudicated in its favor by

a decree of the District Court of the United States for the Eastern District of Wisconsin, entered in a suit by the appellant against the Harley-Davidson Motor Company, 52 F.(2d) 464, a customer of the present defendant. The decree is alleged to bind the latter because it openly assumed control of the defense of that action and was entered in appellant's favor after a trial on the merits, but it is interlocutory merely, granting the usual injunction and reference. No steps have since been taken by either party, no accounting has ever been demanded, and no appeal has been sought. Since we think it clear that a decree of that nature lacks the finality necessary to make it res judicata in another suit, it is unnecessary to decide whether the appellant proved that the Bullard Company took enough part in the trial to be bound by the result.

The appellant does not dispute the general rule that only a final judgment will support a plea of res judicata. Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 297, 37 S. Ct. 506, 61 L. Ed. 1148; G. & C. Merriam Co. v. Saalfield, 241 U. S. 22, 28, 36 S. Ct. 477, 60 L. Ed. 868. Finality in this sense, however, must always be a matter of more or less, and appellant urges that a decree of this nature, although interlocutory in name, is really final in essence, because a full trial on the merits has been had and a decree entered which, as soon as an accounting can be had, will become final in name as well. We have been unable to find any case which supports such a position, and there are a great many which are directly opposed to it. Bassick Mfg. Co. v. Larkin Automotive Parts Co., 23 F.(2d) 92 (D. C.); Wenborne-Karpen Dryer Co. v. Dort Motor Car Co., 14 F.(2d) 378 (C. C. A. 6); De Forest Radio Tel. & Tel. Co. v. Westinghouse Electric & Mfg. Co., 13 F.(2d) 1014 (D. C.); American Foundry Equipment Co. v. Wadsworth, 290 F. 195 (C. C. A. 6); L. E. Waterman Co. v. Modern Pen Co., 193 F. 242 (D. C.) modified 197 F. 534 (C. C. A. 2); Hills & Co. v. Hoover, 142 F. 904 (C. C.); Australian Knitting Co. v. Gormly, 138 F. 92 (C. C.); Brush Electric Co. v. Western Electric Co., 76 F. 761 (C. C. A. 7); Marden v. Campbell Printing-Press & Mfg. Co., 67 F. 809, 815 (C. C. A. 1); Harmon v. Struthers, 48 F. 260 (C. C.); Roemer v. Neumann, 26 F. 332 (C. C.); Rumford Chemical Works v. Hecker, Fed. Cas. No. 12,133 (C. C.).

Appellant relies on Carson Investment Co. v. Anaconda Copper Mining Co., 26 F.(2d) 651 (C. C. A. 9), Larkin Automotive Parts Co. v. Bassick Mfg. Co., 19 F.(2d) 944 (C. C. A. 7), and National Brake & Electric Co. v. Christensen, 258 F. 880 (C. C. A. 7). Of these, the Christensen Case really involved, not res judicata, but the power of a Circuit Court of Appeals to reopen its own decree (John Simmons Co. v. Grier Bros. Co., 258 U. S. 82, 42 S. Ct. 196, 66 L. Ed. 475), and even on that question it is now of doubtful authority. See Luminous Unit Co. v. Freeman-Sweet Co., 3 F.(2d) 577 (C. C. A. 7). The other two cases do deal with res judicata, but in each of them the interlocutory decree had been affirmed on appeal by the Circuit Court of Appeals. The interlocutory decree of the District Court could have been reopened and modified or dismissed on rehearing at any time. United States Envelope Co. v. Transo Paper Co., 229 F. 576, 578 (D. C.); Celluloid Mfg. Co. v. Cellonite Mfg. Co., 40 F. 476, 477 (C. C.). But when affirmed on appeal it becomes the decree of the appellate court, out of the power of the lower court to modify, and able to be reopened only under very exceptional circumstances. In re Potts, 166 U. S. 263, 17 S. Ct. 520, 41 L. Ed. 994; John Simmons Co. v. Grier Bros. Co., 258 U. S. 82, 42 S. Ct. 196, 66 L. Ed. 475; Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 72 F. 545 (C. C. A. 6). Cf. National Brake & Electric Co. v. Christensen, 254 U. S. 425, 41 S. Ct. 154, 65 L. Ed. 341. Of course, in name, the decree is still interlocutory, and whether the added degree of finality given by an appeal will suffice for a plea of res judicata we do not now decide. Such is the rule in several circuits. Carson Investment Co. v. Anaconda Copper Mining Co., 26 F.(2d) 651 (C. C. A. 9); Larkin Automotive Parts Co. v. Bassick Mfg. Co., 19 F.(2d) 944 (C. C. A. 7). See American Foundry Equipment Co. v. Wadsworth, 290 F. 195 (C. C. A. 6). But there are decisions opposed. De Forest Radio Tel. & Tel. Co. v. Westinghouse Electric & Mfg. Co., 13 F.(2d) 1014 (D. C.); Australian Knitting Co. v. Gormly, 138 F. 92 (C. C.).

For the purpose of the present case it is enough that an interlocutory decree still under the control of the District Court lacks that degree of finality necessary to make it conclusive.

The lower court concluded that the Bullard Company was not in control of the defense in the Wisconsin suit and for that reason that it was not foreclosed by the decree therein. We reach the same result on the ground that the decision of the Wisconsin court is not res judicata. The District Court considering the case on the merits held all the claims in suit invalid. We see no reason to differ with that conclusion. In its contention that claims 1 through 7 are invalid, the defendant relies on three patents: Thompson (British) No. 2,392; Wanner (French) No. 370,274; and Hartness (United States) No. 912,676. The Thompson lathe was very similar to that of the appellant. It had a similar plurality of work spindles mounted on a revolving table, driven at the several stations by stationary driving spindles which were in turn driven from a central driving gear concentric with the machine. Thompson omitted the driving gear at the loading station, instead of providing means for disabling the drive as Conradson did, but we cannot regard this as a material difference. The unitary reciprocating tool holder was old in the art. Except in so far as Conradson, in claims 1, 4, 5, and 6, includes a means for varying the speeds of the chucks relative to each other, which Thompson did not provide, we regard the earlier machine as a complete anticipation of the claims 1 to 7. True, it was not so large as that of Conradson, its work holders could not be adapted to such a variety of work, and the indexing mechanism seems to have been inferior, but none of these facts do we regard as material. Invention may have been involved in improving Thompson in these respects, but, if so, it is in no way covered by the claims in suit.

It is doubtful if the simple addition to the Thompson lathe of a device for varying the chuck speeds would constitute invention, for many standard means of accomplishing that purpose are commonly known. In any event, that step had been taken prior to the present patent. Wanner's French patent provided a choice of two speeds by a clutch which engaged either one of two sets of gears, the gears themselves always remaining in mesh. Wanner does differ from the patent in suit in that its driving spindles rotate with its work-holding spindles and all gears are constantly in mesh. But this was apparently an attempt to avoid a difficulty which exists in both Thompson and Conradson, that, as the indexing movement brings the gears on the work spindle into mesh with the gears on the driving spindle, there is likelihood of a clash, for both gears move on the same horizontal plane and have to mesh laterally. This danger can be minimized by proper shaping of the gear teeth, but even then it is a disadvantage which appellant found it necessary to remedy by a valve which allowed the operator to slow down the indexing speed of the work spindle table just as the gears came into mesh. Wanner's idea of having the engagement at the station through a clutch rather than through the gears themselves eliminated it entirely. In this respect Wanner appears to be superior, but it is not fundamentally different, and its device for varying spindle speeds clearly anticipates the present patent.

Hartness, a United States patent, also discloses all of the elements of claims 1 through 7. It is a much more complex machine, due to the effort on the part of the inventor to achieve "cross-cutting" with the regular tools held in the main tool head by giving a limited oscillation to each of the work spindles while remaining at a station. This necessitates a rather complex gearing arrangement, but in other fundamentals the lathe is the same. Gear clashing is avoided by engaging the driving and work spindles through a clutch, as in Wanner, although differing in design. Six different chuck speeds, two more than Conradson and four more than Wanner, are possible within the machine. Hartness, Wanner, and Thompson together clearly sustain the defendant's contention that claims 1 through 7 are invalid.

Claims 29 through 32 involve the stop collar, which may be screwed up and down on the central vertical column, and may be set at any desired position to stop the downward motion of the tool head. In the plaintiff's machine, when the tool head is stopped by the collar, the hydraulic pressure which drives it is increased and an automatic reversal of direction is thereby effected. We fail to see how these can possibly be valid claims. Adjustable

**196**

collars or screws to serve as stop devices are shown in Prentice, United States patent No. 874,035, and Brown, United States patent No. 1,103,479. In these latter lathes the tool head is moved by a cam and the collar or screw is used only to insure that the roller will accurately follow the cam with no "back-lash," but they nevertheless act as positive stops. If it could be an exercise of the inventive faculty to devise a simple adjustable stop, we think Prentice and Brown completely anticipate the present claims.

Decree affirmed.